**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: September 25 2014

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 13-33349 |
| | ) | |
| Oregon Homes, LLC, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION REGARDING MOTION TO DISMISS

A Motion to Dismiss pursuant to 11 U.S.C. §§ 305(a) and 707(a) was filed by interested parties Larry M. Saltis, John X. Bondi, Sandra V. Hazra, and Thomas F. Bear, who each own 5% of the membership units of Debtor, (hereinafter "Minority Members"), and secured creditor BBHS Investors, Inc. ("BBHS") (together, "Movants"). [Doc. # 16]. Debtor and interested persons Stanley Rosenfeld and Rob Cendol, who each own 40% of the membership units of Debtor, ("Majority Members"),[1] oppose the Motion. [Doc. ## 32, 34]. In their Motion, Movants argue that (1) the Majority Members lacked authority to cause a Chapter 7 petition to be filed on behalf of Debtor, (2) the case should be dismissed for cause under 11 U.S.C. § 707(a) as it was filed in bad faith, and (3) the court should dismiss the case under 11 U.S.C. § 305(a) as not being in the best interests of Debtor and its creditors.

---

[1] Although no individual member holds a majority interest in Debtor, for convenience in referring to the parties, the court refers to the two individuals who together own 80% of the membership units as the Majority Members and the four individuals who together own 20% of the membership units as the Minority Members.

The court held a hearing on December 5, 2013, at which Debtor's attorney, the Chapter 7 Trustee, and attorneys for BBHS and the Minority Members all appeared in person and at which counsel presented argument in support of their respective positions. The court took the Motion under advisement but subsequently set the Motion for an evidentiary hearing on the issue of the authority of the Majority Members in commencing this Chapter 7 case and, specifically, on the nature of Debtor's business and the parties' intentions when they entered into the operating agreement. The scheduled evidentiary hearing was held on February 26, 2014. Debtors' attorney, and attorneys for BBHS and the Minority Members attended the hearing in person and had the opportunity to present testimony and evidence in support of their positions.

Having considered the briefs and the arguments of counsel, as well as the minimal facts and evidence to which the parties stipulated at the December 25, 2013, hearing on the Motion, for the reasons that follow, the court finds that the Minority Members did not meet their burden of proving a lack of authority to file the petition. Because the scheduled evidentiary hearing was limited to the issue of authority to file, a further evidentiary hearing will be scheduled on issues relating to Movants' arguments under §§ 707(a) and 305(a).

## FACTUAL BACKGROUND

Debtor is an Ohio limited liability company. [*See* Doc. # 2].[2] There is no dispute that the Majority Members caused Debtor's Chapter 7 petition to be filed. Debtor's schedules show that, except for certain office equipment valued at $500.00 and a checking account valued at $108.22, its only asset is 94 acres of real property. [Doc. # 1, pp. 3, 9-11/49]. The parties stipulated that the real property consists of farmland that is being rented and twenty-one lots, which are not being developed due to a lack of operating capital.

The parties stipulated that the Operating Agreement attached as an exhibit to the Motion is a true and accurate copy of Debtor's operating agreement. The Operating Agreement provides in relevant part as follows:

> 2.4 Purposes. Except as provided by the Act or the Articles of Organization, the Company may pursue any purpose or purposes for which individuals may lawfully associate themselves.
> . . . .
> 4.1 Management. Control of the Company and all of its affairs shall be vested in the Members. Except as otherwise provided in this Agreement, Company business decisions

---

[2] The court takes judicial notice of the contents of its case docket and the Debtors' schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

may be made by any of the Members acting on behalf of the Company.

    4.2 Majority Vote. No Member shall have the authority to do any of the following on behalf of the Company without the approval by Majority Vote of the Members:

. . . .
    (C) Sell all or substantially all of the Company's property[.]

. . . .
    4.3 Unanimous Vote. No Member shall have the authority to do any of the following on behalf of the Company without the approval by unanimous Vote of the Members:

. . . .
    (C) Do any act which would make it impossible to carry on the business of the Company[.]
. . . .

[Doc. # 16, attached Ex. A]. The Operating Agreement is governed by the laws of the state of Ohio. *Id.* at § 13.9].

The Operating Agreement is silent, and the court found it to be ambiguous, regarding authority to file a bankruptcy petition. [*See* Doc. 36]. The court, therefore, set the Motion for evidentiary hearing on that issue, seeking "further clarification on the nature of Debtor's business, its stated purpose, and the parties' intentions when the operating agreement was drafted and signed." At the hearing, Movants offered no additional evidence or testimony, relying solely on the terms of the Operating Agreement.

## LAW AND ANALYSIS

Movants ask the court to dismiss this case, arguing that it was filed without proper authority. Under 11 U.S.C. § 707(a), the court may dismiss a Chapter 7 case "only after notice and a hearing and only for cause. . . ." Cause for dismissal exists where a business entity lacks authority to file a bankruptcy petition. *Price v. Gurney*, 324 U.S. 100, 106 (1945) (stating that if a court finds a lack of corporate authority to file a bankruptcy petition, "it has no alternative but to dismiss the petition"); *In re Comscape Telecommunications, Inc.*, 423 B.R. 816, 829 (Bankr. S.D. Ohio 2010) (interpreting "cause" under § 1112(b) and holding that "[i]t is well established that lack of authority to commence a bankruptcy case constitutes cause for dismissal"); *In re D&W Ltd., LLC,* 467 B.R. 427, 432 (Bankr. E.D. Mich. 2012) (granting motion brought under § 707(a) where court found debtor lacked authority to file bankruptcy petition).

The court recognizes that there is conflicting case law regarding the burden on a motion to dismiss a bankruptcy petition for lack of authority to file. *Compare In re Player Wire Wheels, Ltd.,* 421 B.R. 864, 868-69 (Bankr. N.D. Ohio 2009) (finding the burden in on the movant in addressing motion to dismiss under § 1112(b) based upon unauthorized filing); *In re Comscape Telecommunications, Inc.*, 423 B.R. 816, 830

3

(Bankr. S.D. Ohio 2010) (same); *In re Quad-C Funding LLC*, 496 B.R. 135, 142 (Bankr. S.D. Ohio 2013) (placing burden on movant and stating that "[p]lacing the burden of proof on the debtor on a motion to dismiss a filing would invariably allow any party in interest to force a debtor to expend its diminished resources litigating over the issue whether it could seek to rehabilitate or liquidate itself in an orderly fashion under the auspices of the Bankruptcy Code"); *In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 859 (Bankr. N.D. Ill. 2014) (same); *Simon v. Amir (In re Amir)*, 436 B.R. 1, 16 (B.A.P. 6th Cir. 2010) (addressing a debtor's motion to dismiss and stating that movants have the burden of demonstrating that cause exists under § 707(a)) *with In re Peterson's Motor Express, Inc.*, 84 F. Supp. 230, 232 (D.N.H. 1949) (placing burden on the debtor) *and In re Real Homes, LLC*, 352 B.R. 221, 227-28 (Bankr. D. Idaho 2005) (stating that once movant makes a *prima facie* showing, the burden shifts to the debtor). The court agrees with those courts that place the burden of demonstrating cause for dismissal and, specifically, that the filing of the case was not authorized, on the movant. As discussed below, the court finds that Movants did not meet their burden of showing a lack of authority to file. The court further finds on the evidence before it that the Majority Members had authority to cause the filing of Debtor's petition.

In determining who is authorized to file a bankruptcy petition on behalf of an entity, the court must look to state law governing the entity. *Price*, 324 U.S. at 106. In this case, Ohio law is the applicable law. Under Ohio law, "[u]nless otherwise provided in writing in the operating agreement, the management of a limited liability company shall be vested in its members in proportion to their contributions to the capital of the company. . . ." Ohio Rev. Code § 1705.24. Under this provision, the Majority Members, who together hold eighty percent of the membership units of Debtor, had authority to authorize the filing of Debtor's bankruptcy petition absent the Operating Agreement providing otherwise.

In construing the terms of the Operating Agreement, the court must apply principles of Ohio contract law. *See Holdeman v. Epperson*, 111 Ohio St. 3d 551, 554 (2006); *Telxon Corp. v. Fed. Ins. Co.*, 309 F.3d 386, 391 (6th Cir. 2002) (stating that the interpretation of contracts is a matter of state law). If it appears that the terms of the contract dictate the rights and obligations of the parties, the inquiry ends because "courts presume that the intent of the parties to a contract resides in language they chose to employ in the agreement." *Holdeman*, 111 Ohio St. at 554. "Often, the intended meaning of a word or phrase may be clear when that word or phrase is considered in the context of other words or phrases in the contract." *EnQuip Technologies Grp. v. Tycon Technoglass,* 2012-Ohio-6181, 986 N.E.2d 469, 475 (2012). Thus, the intended meaning of any part of a contract should be determined in light of the whole contract. *Id.*

The Operating Agreement vests control of Debtor and its affairs in the members and provides that business decisions may be made by any of the members acting on behalf of Debtor, "[e]xcept as otherwise provided in this Agreement." [Doc. # 16, Ex. 1, § 4.1]. Although the Operating Agreement is silent regarding the filing of a bankruptcy petition and, specifically, a Chapter 7 liquidation petition, it requires approval by a majority vote of the members in order to "[s]ell all or substantially all of the Company's property." [*Id.* at § 4.2(C)]. Thus, although § 4.1 of the Operating Agreement grants broad authority to individual members to act on Debtor's behalf, liquidation of its assets, *i.e.* selling all or substantially all of Debtor's assets, is circumscribed by § 4.2(C) and requires approval by a majority vote of the members. Reading these provisions together, and given that the Operating Agreement is otherwise silent on the issue, the court finds that the Majority Members had authority to seek the orderly and expeditious sale of Debtor's assets through the filing of Debtor's Chapter 7 bankruptcy petition.

Nevertheless, Movants argue that the filing of Debtor's petition required a unanimous vote of the members. In support, Movants rely on a provision of the Operating Agreement that requires approval by unanimous vote of the member to "[d]o any act which would make it impossible to carry on the business of the Company." [Doc. # 16, Ex. 1, § 4.3(C)]. While the court initially found ambiguity in this provision and sought evidence on the issue of the nature of Debtor's business and the parties' intentions in this regard when the Operating Agreement was drafted and signed, at the hearing, Movants offered no additional evidence and argued that the Operating Agreement "speaks for itself." Movants argued that in accordance with § 2.4, Debtor may pursue any lawful purpose and that filing a Chapter 7 petition makes it impossible to carry on its business. The court disagrees.

To the extent that the "business of the Company" is to pursue any lawful purpose, which is the only evidence of Debtor's business relied upon by Movants, the liquidation of Debtor's assets is not inconsistent with its ability to do so. Liquidation through Chapter 7 does not effect dissolution of the company. *Tech. Express, Inc. v. Integrated Telecom Express, Inc.(In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 126 (3d Cir. 2004) (stating that "[d]issolution . . . is not an objective that can be attained in bankruptcy"); *In re CVA Gen. Contractors, Inc.,* 267 B.R. 773, 781 n. 10 (Bankr. W.D. Tex. 2001) (finding that a Chapter 7 liquidation of a corporation does not effectuate the dissolution of that corporation ); *In re E. End Dev., LLC*, 491 B.R. 633, 640 (Bankr. E.D.N.Y. 2013) (stating that "[t]he filing of a bankruptcy petition is not equivalent to . . . dissolution); 6 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 727.01[3] (16th ed. 2013) ("After liquidation, any dissolution of the corporation or partnership that the parties desire

must be effectuated under state law, since the Code does not provide for dissolution of corporations or partnerships."). Debtor will continue to exist after Chapter 7 and may pursue any lawful purpose thereafter.

The court thus concludes that the liquidation of Debtor's assets will not make it impossible to carry on the business of the Company to the extent contemplated in § 4.3(C) of the Operating Agreement. This conclusion is bolstered by the terms of the Operating Agreement itself in that only approval by a majority vote of the members is required to sell all of the assets of the company, while a unanimous vote is required for an act that the parties contemplated would make it impossible to carry on the business of the company, such as seeking dissolution at state law. It does not appear to the court that § 4.3(C) contemplates that the sale of all of the assets of the company will make it impossible to carry on the business of the company.

The case law and Ohio statute cited by Movants in support of their argument that a Chapter 7 liquidation does make it impossible to carry on Debtor's business are distinguishable. In *In re Avalon Hotel Partners, LLC,* 302 B.R. 377 (Bankr. D. Or. 2003), cited by Movants, the court was interpreting an operating agreement's provision relating to members' approval of "Major Decisions." *Id.* at 380. The court found that "[a] decision to file for bankruptcy protection is a decision outside of the ordinary course of business" and that the bankruptcy petition was not authorized by the operating agreement as it was approved by members holding an insufficient percentage of ownership interests. *Id.* at 380-81. The case did not address whether a Chapter 7 petition makes it impossible to carry on any lawful business.

In *DB Capital Holdings, LLC v. Aspen HH Ventures, LLC (In re DB Capital Holdings, LLC)*, 463 B.R. 142 (Table) (Bankr. D. Col. Dec. 6, 2010), also cited by Movants, the court was interpreting a provision of the debtor's operating agreement that limited the general grant of authority to its members where their act "would make it impossible to carry on the *ordinary* business of the Company." *Id.* at *5 (emphasis added). The court rejected the debtor's argument that its bankruptcy did not make it impossible to do business. The court found their argument "ignores the express modification of the term 'business' by the term 'ordinary,'" and explained that the filing of the debtor's bankruptcy petition "is an act that makes it impossible to carry on a company's 'ordinary business,' even though the company's ability to continue to 'do business' is not completely eliminated." *Id.* Unlike the operating agreement in *DB Capital Holdings, LLC,* Debtor's Operating Agreement refers to an act that makes it impossible to carry on "the business of the Company." It does not modify the term "business" to refer to "ordinary business."

And finally, Movants cite a provision of Chapter 1705 of the Ohio Revised Code that requires a unanimous vote of the members to "[d]o any act that would make it impossible to carry on the *ordinary*

6

business of the company." Ohio Rev. Code § 1705.25((A)(3)(c) (emphasis added). Movants, however, offered no evidence of what constitutes the "ordinary" business of Debtor. Moreover, while Chapter 1705 governs relations among members of an Ohio limited liability company, with certain exceptions not applicable here, it does so only to the extent that the operating agreement does not otherwise provide. Ohio Rev. Code § 1705.081(A). As discussed above, the Operating Agreement specifically does not include the modifier "ordinary" in describing the business of the company.

## **CONCLUSION**

For all of the foregoing reasons, the court finds that Movants did not meet their burden of proving that the Majority Members lacked authority to approve the filing of Debtor's Chapter 7 petition, and the court specifically finds that the Majority Members had authority under the terms of the Operating Agreement to approve the filing.

To the extent Movants argue that the case should be dismissed for cause under § 707(a) based upon it being filed in bad faith and that it should be dismissed under § 305(a) as not in the best interests of Debtor and its creditors, the Motion is based on facts not in evidence. The court will schedule a further evidentiary hearing on these issues.

**THEREFORE,** good cause appearing,

**IT IS ORDERED** that the Motion is set for *Further Evidentiary Hearing* on **November 5, 2014, at 9:30 a.m.** in Courtroom No. 2, Room 103, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.

###

7

13-33349-maw    Doc 44    FILED 09/25/14    ENTERED 09/25/14 16:55:59    Page 7 of 7